(60 Misc. Rep. 277.)

### In re JOHNSON'S WILL.

(Surrogate's Court, Schuyler County. July, 1908.)

WILLS (§ 122*)—PROBATE—INTERLINEATIONS.

Two years after the execution of a will the physician of testatrix made certain alterations and interlineations at her request. At the time she stated, in reply to an inquiry, that her signature to the will was all right, and the witnesses to the alterations signed their names under a marginal note to the left of the writing of the body of the will. *Held*, that the will would be admitted to probate, without regard to the erasures, alterations, and marginal note.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 320; Dec. Dig. § 122.*]

Application of Robert H. Fausette for the probate of the alleged last will of Rachel A. Johnson. Probate granted.

Charles O. Townsend, for proponent.
Seaman F. Northrup, for contestant.

NYE, S. Rachel A. Johnson, the testatrix, died on the 5th day of October, 1907. The contestant alleges mental incapacity, undue influence, and that the paper offered for probate was not properly executed and attested, and that, if it was ever executed by the testatrix, it had been revoked and destroyed.

The paper propounded for probate is written upon a printed form, with the usual attestation clause, and consists of a single sheet. Certain alterations, interlineations, and erasures appear upon the face of the instrument. In one clause of the will, in which a legacy of $300

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was given to Robert H. Fausette, a nephew of the testatrix, the word "Three" and the figures "($300)" have been erased, and the word "Four" and the figures "($400)" substituted therefor, thus changing the amount of the legacy from $300 to $400. In another clause the words "Alfred D. Johnson and," also the words "to be equally divided between them," in the same clause, have been obliterated by ink lines drawn over or through them, and the words "to the said Robert H. Fausette alone" have been interlined. In another clause the words "also my two pictures of my Father & Mother, to the said Robert H. Fausette and all my raiment (clothing) I give to Elizabeth B. Welton (my youngest sister)" have been interlined. Upon the will is a margin, separated from the body of the sheet by the usual marginal line, which is ruled upon printed blanks. To the left of the writing of the body of the will, on this blank marginal space and running lengthwise, is the following marginal note:

"On the 5th day of Sept. 1906 the maker of this will directed that the first amount of money mentioned of $300 to Robt H. Faussett was changed to ($400) also my stock animals to Robt. H. Faussett alone, also my two pictures of my Father & Mother both to Robert H. Faussette & further all my clothing (Raiment) to my youngest sister Elizabeth B. Welton corrected & changed in presence of both witnesses.                    James P. Hawes.
"Mabel E. Fausette."

Dr. James P. Hawes, the scrivener who drew the paper offered for probate and who is a subscribing witness, testifies that testatrix died of "tuberculosis or consumption." Dr. Hawes also testifies that testatrix gave him directions as to what disposition she wished to make of her property, and that, after the will was written, he read it over to her, and that she said "that it was as she wanted it." Both of the subscribing witnesses testify that, at the time of the execution of the will, on the 23d day of December, 1904, the testatrix appeared to be, and they believe she was, of sound mind, memory, and understanding, not under restraint, that she signed the paper offered for probate in the presence of each of them, and that they each signed as subscribing witnesses in the presence of the testatrix and in the presence of each other.

On the 5th day of September, 1906, the testatrix stated to Dr. Hawes, who drew the original will, "I want to make some changes in the will," and she then asked, "Is it necessary to make out a new will?" and Dr. Hawes then replied, "It is not necessary to draw a new will; I can put the changes right on there" (referring to the original will). Dr. Hawes then made a memorandum, or, as he says, "I took them down as she noted them; I scratched out what was objectionable, and wrote out these on the margin, and then signed it as a witness." After the erasures, interlineations, and alterations had been made, Dr. Hawes said to the testatrix, "Here is your signature" (indicating testatrix's signature upon the will written by her on the 23d day of September, 1904), "Is that all right?" Testatrix replied, "Yes," and then the witnesses signed their names under the marginal note. Several witnesses have testified, in a general way, to acts and conversations of the deceased which they say impressed them as irrational; and

Dr. Hawes testifies "she was of weak mind, but sound mind, and she knew what she had control of."

There is no standard of mental capacity which it is necessary for a person to possess to enable him to make disposition of his property by will. All that is required is that the testator have sufficient intelligence and mental power to understand what he is doing and the legal effect of the instrument he is making. If he possesses such intelligence, he may bestow his bounty as he pleases, even if the disposition he makes of his property may appear, and in fact be, unjust and inequitable. Incapacity to make a will cannot alone be inferred from advanced years, poor health, or a weak mind. Matter of Otis, 1 Misc. Rep. 259, 22 N. Y. Supp. 1060. The "sound mind and memory" which the law exacts as a condition of testamentary competency means that the testator must be able to recollect the objects of his bounty and the particulars of the property he is about to bequeath, to grasp the provisions of the paper he is executing, and to form a rational judgment of the transaction in which he is engaged. Matter of Blair's Will, 16 Daly, 540, 16 N. Y. Supp. 874.

The court of last resort in this state has declared that, to avoid a will on the ground of undue influence, "it must be made to appear that it was obtained by means of influence amounting to moral coercion, destroying the free agency, or by importunity which could not be resisted, so that the testator was constrained to do that which was against his will, but which he was unable to refuse, or too weak to resist." Brick v. Brick, 66 N. Y. 144, 149. I am of the opinion that, at the time of the execution of the paper offered for probate, December 23, 1904, the testatrix was of sound mind, memory, and understanding, competent to devise real estate, and that she was not under restraint, and that the paper executed on that day was legally executed.

The question, then, remaining to be determined, arises out of the erasures, alterations, and marginal note appearing on the face of the instrument. These alterations, interlineations, and erasures were made by Dr. Hawes, at the request of the testatrix, nearly two years after the execution of the will. A testator may destroy or revoke his will at pleasure; and he may change and alter its provisions as often as he chooses, provided he has the altered instrument re-executed and re-attested according to law. The object of the courts is to give full effect to the intention of the testator; but the will, to which such effect is to be given, is one made in conformity with the requirements of the statutes. In the case of an interlineation or other alteration by the testator, without a new attestation, if effect should be given to such change, the statute of wills, which requires an attestation by subscribing witnesses, would be disregarded. If, on the contrary, a will were, because of alterations, to be held entirely void, it might utterly defeat the intentions of the testator. The statute dealing with revocations is plain. 2 Rev. St. (1st Ed.) pt. 2, chap. 6, tit. 1, § 42. It specifies the acts which may work revocation, and in fact declares that there is no other way. The authorities are clear and uniform that revocation can only be made pursuant thereto. Lovell v. Quitman, 88 N. Y. 377, 42 Am. Rep. 254; Burnham v. Comfort, 108 N. Y. 535, 541, 15

N. E. 710, 2 Am. St. Rep. 462; Matter of Davis, 105 App. Div. 221, 93 N. Y. Supp. 1004. The will itself is to be burnt, torn, canceled, obliterated, or destroyed, not with the intent or purpose of "altering," but, as the statute says, "with the intent and for the purpose of revoking the same." Lovell v. Quitman, supra; Smith v. Wait, 4 Barb. 28; Matter of Forman, 54 Barb. 276.

There was no intent on the part of the testatrix to revoke or destroy the will executed on December 23, 1904. The attempt to change the will was like an unsuccessful attempt to make a codicil to the will. The original will is rendered invalid by failure to have the codicil properly executed. There was not a sufficient republication of the will after the erasures, alterations, and interlineations had been made. Where a will is altered, after execution, by interlineation or erasure, if the original language can be ascertained, the original will may be admitted to probate, and its provisions carried out in disregard of the alteration. Matter of Wilcox Will (Sur.) 20 N. Y. Supp. 131. In Redfield on Wills, p. 315, § 22, it is said:

"Where the testator makes an alteration in his will by erasure or interlineation, or in any other mode, without authenticating such alteration by new attestation, in the presence of witnesses or other form required by the statute, it being presumed that the erasure was intended to be dependent upon the alteration going into effect as a substitute, such alteration not being so made as to take effect, the will stands, in legal force, the same as it did before, so far as it is legible, after the attempted alteration."

In Schouler, Wills, §§ 432, 434, the rule is stated as follows:

"Where a will is informally altered by a testator, * * * the legal effect is not to make the will void, but to establish it in probate as it stood before the change was made. * * * If there is not sufficient attestation of the will as altered, the alteration cannot take effect, but the will stands as before."

I conclude, therefore, that the will must be admitted to probate and regarded as it was before the erasures, alterations, and marginal note before mentioned were made; and a decree may be entered in accordance with this opinion.

Decreed accordingly.