(76 Misc. Rep. 168.)

## In re FOLEY'S WILL.

### (Surrogate's Court, New York County.   March, 1912.)

1. WILLS (§ 111*)—EXECUTION—SUFFICIENCY.

Where a draftsman of a will, after it had been read to testatrix, and
she had affixed her mark thereto, but before she declared it to be her last
will and testament, and before subscribing witnesses had signed it at
her request, wrote in blank spaces in the testimonium clause the street
number of the testatrix's residence, the date of the execution of the will,
and the names of the subscribing witnesses, and at the same time wrote
about the mark of testatrix her name and the words "her mark," and
the paper was not again subscribed by the testatrix, the will may be pro-
bated in so far as it was subscribed by her, but no further.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 267–275; Dec.
Dig. § 111.*]

2. WILLS (§ 108\*)—VALIDITY—STATUTE OF WILLS.

While the courts will presume in some cases that the order prescribed for the celebration or execution of a will has been rightly pursued, yet, where the order has been established as a fact, the courts never ignore the order in which the several requirements of the statute of wills shall be performed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 249–258; Dec. Dig. § 108.\*]

3. WILLS (§ 108\*)—VALIDITY—STATUTE OF WILLS.

The formalities laid down in the statute of wills are essential to the act of making the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 249–258; Dec. Dig. § 108.\*]

4. WILLS (§ 111\*)—VALIDITY—STATUTE OF WILLS—"END OF THE WILL."

The words "end of the will" in the statute of wills requiring signature at the end of a will refer to the logical and not the physical end and apply to the time of signature as well as the place.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 267–275; Dec. Dig. § 111.\*

For other definitions, see Words and Phrases, vol. 3, pp. 2387, 2388; vol. 8, p. 7649.]

5. WILLS (§ 111\*)—EXECUTION—SIGNATURE.

Words written in the body of a will after it has been signed by testatrix are not entitled to probate unless she again subscribes it, though she subsequently acknowledges her subscription.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 267–275; Dec. Dig. § 111.\*]

6. WILLS (§ 207\*)—PROBATE—PARTIAL INVALIDITY.

The surrogate may admit a part of a will duly executed to probate and refuse to admit a part not duly executed if the two are severally separable, independent, and concrete.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 515; Dec. Dig. § 207.\*]

Proceeding to probate the will of Annie F. Foley. Decree entered.

Davies, Auerbach, Cornell & Barry, for proponent.
Edmund Bittner, for executor.
Michael J. Grady and Warner B. Matteson, for contestants.

FOWLER, S. [1] The contest over the probate in this matter turns upon a single fact. After the will had been read over to her and the testatrix had affixed her mark to the paper propounded, but before the attesting witnesses had subsigned it, one of the attesting witnesses, who was also the lawyer who had prepared the testamentary paper for execution, filled up some blanks in the testimonium clause of the testamentary paper, at the same time writing about the mark of testatrix her name, thus "Annie F. Foley X her mark." The blanks filled by the lawyer after the act of subscription of the will by the testatrix were the words italicized in the following clause:

"In witness whereof I have hereunto subscribed my name and affixed my seal at No. *307* Lenox avenue, in the Borough of Manhattan, City of New York, this *twenty-eighth* day of September, one thousand nine hundred and eleven, in the presence of *Anthony F. Cassidy* and *Frederick J. Fuller* whom I have requested to become attesting witnesses thereto."

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

After the blanks had been thus filled up by the lawyer, who was one attesting witness, he then, as he swears, held the will up before the testatrix "and asked her if she declared it to be her last will and testament, and she said 'Yes.' I asked her if she declared and acknowledged that mark to be her signature, and she said, 'Yes.' I asked her if she requested Mr. Cassidy (the other attesting witness) and myself to act as subscribing witnesses, and she said 'Yes.' I then read the attestation clause, and asked her if that was right, and she said, 'Yes.' Mr. Cassidy and I then signed our names as witnesses." Thus it will be seen that the writing of the words italicized in the testimonium clause was in fact done after the act of subscription by the testatrix (for her mark is her statutory subscription), but that it was before the act of publication or declaration by testatrix. All the other statutory requirements were performed at the same session, held for the celebration or execution of the will; all the actors in such ceremony then being actually present at the same time. There is in this cause no dispute about the facts, or the order of the fulfillment of the statutory requirements.

The only question on the paper propounded is, What is the effect of the lawyer's filling in the blanks in the testimonium clause of the will, after the testatrix had subscribed the same, but before her act of publication or declaration of such will, and before rogatio testium, or her formal request to the attesting witnesses to act as such, and before the several subsignations of the witnesses in conformity with rogatio testium? Counsel concede that they find no authority precisely in point. The surrogate has therefore felt obliged to examine at length the matter for himself.

It would be, I think, dangerous to hold at large that after a testator has made the subscription to his will, which subscription is by the statute of wills now in force required to be at the end thereof, another than intending testator or even intending testator himself might in any case write words, with testamentary or dispositive effect, above the subscription and into the body of a testamentary paper. It happens in this matter before me that the words thus written into the instrument were inconsequential and trifling, but, had they been dispositive words of import, the principle concerning the legal effect of such an act would be the same. What does the statute of wills now mean when it commands that every last will and testament shall be subscribed by the testator at the end of the will? Decedent Estate Law (Consol. Laws 1909, c. 13) § 21. Does it mean the physical end, or the logical end? Can it in either event be said that a testator subscribed at the end of a will, when something afterwards is overwritten?

There are various arguments bearing on the question in this cause: The entire session held for the celebration of the will may be regarded as unitas actus—i. e., as a single act—and in this event the precise order of the things specified by the statute as essential to the testamentary act may be disregarded, provided each and all of the requirements of the statute are performed at the same session held for executing the will. Doe v. Roe, 2 Barb. 200, 205. In the absence of

all adjudication on the force and effect of the statute of wills now in force, such an argument might have more weight. But, as it is, it has none.

[2] While it is true that the courts of this state will presume in some cases, in the absence of proof to the contrary, that the order prescribed for the celebration, or execution, of a will has been rightly pursued (Jackson v. Jackson, 39 N. Y. 159; Matter of Pepoon, 91 N. Y. 255), yet the construction accorded by such courts to the present statute of wills never ignores the order in which the several requirements of the statute shall be performed, when such order is established as a fact. The established construction does not in effect sanction the theory that it is optional with the actors in an act of testamentation to perform such things as the statute prescribes in any order such actors may choose to perform them. Jackson v. Jackson, 39 N. Y. 163; Sisters of Charity v. Kelly, 67 N. Y. 409, 413; Matter of Hewitt, 91 N. Y. 261, 263. In this state under the present statute of wills, animus testandi on the part of the testator is insufficient to establish a will, where it is proved that there has been a noncompliance with the directions of the statute upon the part of either the testator or of the attesting witnesses. Matter of Kivlin, 37 Misc. Rep. 187, 74 N. Y. Supp. 937; Matter of Andrews, 162 N. Y. 1, 5, 56 N. E. 529, 48 L. R. A. 662, 76 Am. St. Rep. 294.

[3] But there is another argument on the precise question before me, and one more consistent with authority. Venia testandi, or the privilege or right of making a will, is at the present day referable wholly to a statute of this state, and it is necessary to show a compliance with such statute upon any proceeding to probate a testamentary paper in the courts of the state. Arguments, founded on general doctrines of probate law or on the older statutes of wills, have little bearing on the portion of the statute now regulating in detail the formalities requisite for the valid act of testamentation. If the formalities now laid down in the statute had not been deemed essential to the act of making a will, the Legislature would not have prescribed them. Matter of Andrews, 162 N. Y. 1, 5, 56 N. E. 529, 48 L. R. A. 662, 76 Am. St. Rep. 294; Matter of Hewitt, 91 N. Y. 261, 263. The requirements of the statute of wills are highly peculiar. This statute stands in some respects only in the same category with such enactments as the statute of frauds and its prototype, the French Ordonnance de Moulins of the year 1566. These enactments nevertheless required in almost every instance a substantial compliance with the directions prescribed. But the statute of wills refers to a unilateral act only. Without adherence in every respect to the directions prescribed by statute, a unilateral act of a party may have no validity whatever. When a unilateral act is of a quasi public character, and a will is such, the state universally prescribes with particularity the formalities requisite for the authentication or validity of the act itself. The reason why the requirements of the statute of wills demand implicit obedience is that, as an act of testamentation is unilateral and to take effect after the death of the chief actor, it is peculiarly exposed to fraud, simulation, or even forgery. Therefore it is that for the

making of wills special forms were required by law. The forms prescribed are then closely obligatory in order to give validity to the act. The motive of the legislative requirement may be, and in the instance of testamentation is, no doubt, corroboration or authentication, and to prevent fraud. In the instance of a testamentary act it may be stated generally as a rule of law that, without adherence to the prescribed forms, the act itself has no juridical value whatever. The statute of wills does not impose forms with a view to the convenience of the parties, and their omission is consequently not optional or immaterial, but the forms themselves go to the very essence of the legal act. It is an error to regard such directions as mere technicalities, for they are founded on the highest public policy, and a noncompliance is fatal to the validity of the act attempted.

[4] The first question I shall consider is, Did the testatrix in this matter subscribe the will "at the end" thereof within the true meaning of the statute, if after such subscription something was overwritten, and not subscribed by her? It would seem to me that she did not sign at the end thereof so as to include in its operation the words thereafter overwritten. I am aware that it has been intimated that the words, "the end of the will," refer to place, and not to time. Hewitt v. Hewitt, 5 Redf. Sur. 271. . But such an intimation is rather argumentative than controlling. It is not consistent with the adjudications. The end of the will has been held to mean the logical, and not the physical, end. In this state what is termed the logical end in England has been termed the "intellectual or speaking end." But both expressions or terms denote the end contrasted with the "physical end." Matter of John Tonneles' Will, 5 N. Y. Leg. Obs. 254; Matter of Walton, L. R. (3 Prob. & Div.) 159; Matter of Stoakes, 23 Wkly. Rep. 62. The logical end must, in the nature of things, include time as well as space. If we give another construction to the words, "end of the will," than the physical end, as we must do under the authorities, we are at liberty to include both time and space in arriving at the logical end. The term "logical end," which is a term of art, under the authorities necessarily connotes both time and space. When something is written in after the testator's subscription, the testator has certainly not signed at the logical end of the will, although he may have signed at the physical end. It is quite unnecessary to review the authorities of this state bearing on the meaning of the words "end of the will," for none of such decisions goes to the exact point presented here. They generally turn upon an issue of fact, viz., did or did not a particular testator subscribe the will under consideration at the physical end thereof.

[5] It is claimed before me that the subsequent acknowledgment by testatrix of her prior subscription and her subsequent publication of the will have the legal effect of including the words written in the paper after such prior subscription. This seems to the surrogate a fallacy and to be a dangerous doctrine and one he is unwilling to subscribe to until advised by higher authority. In the first place, the publication or declaration made subsequently to subscrip-

tion serves only to publish that which has been actually subscribed. It is the same with the acknowledgment of a prior subscription. In this respect I am for a construction of the statute of wills which requires a literal compliance with the statute, because public policy seems to dictate such a construction in this instance. Testators or others should not be permitted to overwrite something in wills after such testator has subscribed the same, at least without the necessity of a new subscription on the part of the testator. There is no difference in principle between writing individual words in a will after its subscription, and writing an entirely new sheet in the will. The right to do one implies the right to do the other.

Under similar circumstances it has been held that subsequent acknowledgments of prior subscriptions are not the equivalent of subscriptions. Nor is passing a dry pen in the presence of witnesses over a subscription made prior to such presence a subscription within a not dissimilar statute of wills. Casement v. Fulton, 5 Moo. P. C. 130; Kevil v. Lynch, 1 I. R. (8 Eq.) 244. In Casement v. Fulton the point came before the Privy Council on an appeal from India, involving the "Indian Will Act of 1838," copied from the English act (St. 1 Vict. c. 26). The Privy Council held that, where a Wills Act required a subscription in the presence of witnesses, an acknowledgment of a prior subscription was not the equivalent of actual subscription. But, independently of any foreign authority on a different statute, I feel constrained to hold in this case that testatrix's acknowledgment of her subscription did not serve to incorporate in the will the words written in the body of the will after the subscription. The point is that such words so overwritten were never subscribed by testatrix. It is true that the statute of wills does provide for either a subscription in the presence of the attesting witnesses or an acknowledgment by testator of such subscription. Decedent Estate Law, § 21; Matter of Mackay, 110 N. Y. 611, 18 N. E. 433, 1 L. R. A. 491, 6 Am. St. Rep. 409; Matter of Laudy, 148 N. Y. 403, 407, 42 N. E. 1061; Matter of Abercrombie, 24 App. Div. 407, 48 N. Y. Supp. 414; Matter of Turell, 47 App. Div. 560, 565, 62 N. Y. Supp. 1053. But it does not and cannot provide for an acknowledgment of that which is not a subscription in fact. This may seem casuistry, but it is not. It goes to the very essence of the execution.

Yet as every statute must have a reasonable interpretation, if in point of fact there has been in this cause a substantial compliance with the statute of wills on the part of testator and the subscribing witnesses, the execution of the will in the manner detailed in the evidence ought to suffice for some purposes. Matter of Voorhis, 125 N. Y. 765, 767, 26 N. E. 935; Matter of Hunt, 110 N. Y. 278, 281, 18 N. E. 106; Lane v. Lane, 95 N. Y. 494, 499. But this is a different assertion from one that a noncompliance is ever a substantial compliance. The doctrines relating to substantial compliance have no reference to an established noncompliance with the statute of wills.

[6] That the testatrix did in fact subscribe the paper propounded as it existed prior to the alterations written over her signature is es-

tablished by the proofs. That such subscription and the publication and attestation were sufficient to entitle such matter as was actually subscribed by testatrix to probate I have no doubt, although this is the difficult point of the case. Matter of Gibson, 128 App. Div. 772, 113 N. Y. Supp. 266; Matter of Welsh, 1 Redf. Sur. 247. That the subsequent authorized act of writing over the signature of testatrix certain words, definitely proved before me, does not destroy the effect of the testament as actually subscribed, has been held in another jurisdiction of the United States, and I think rightly so held. In Lange v. Wiegand, 125 Mich. 647, 85 N. W. 109, the daughter of the testator by his direction filled in a correct date in a will after its execution, and it was held that the alteration had no destructive effect upon the validity of the part well executed.

One of the judicial obligations of every court of probate is to identify and determine the constituents of the testamentary instrument or scripts propounded. The probate proceeding being in rem, the surrogate must determine, in disputed causes in the first instance, what writings constitute the will and are proceeded on for probate. He is bound to refuse probate to such parts of a paper propounded as have not been executed in conformity with the statute of wills, and he may admit to probate such parts as are well and duly executed if separable and integral or independent. Burger v. Hill, 1 Bradf. Sur. 360, 373; Matter of Welsh, 1 Redf. Sur. 238; Matter ·of Gibson, 128 App. Div. 769, 113 N. Y. Supp. 266; Matter of Janes, 87 Hun, 57, 33 N. Y. Supp. 968; affirmed 152 N. Y. 647, 46 N. E. 1148. This was the established rule of law in the probate jurisdictions which preceded the Revised Statutes. Nothing has since transpired to change the rule.

The contestants having rested their entire case on the irregularity mentioned at the outset, it is apparent from the evidence that the script propounded, in so far as it was actually subscribed by testatrix, is entitled to be probated. The words written over the subscription, after the testatrix had subscribed the will, are not entitled to probate. Let the findings and the decree herein provide accordingly.

Decreed accordingly.