In the Matter of the Probate of the Will of GERTRUDE L. C. GOETTEL, Deceased.

Surrogate's Court, Monroe County, November 28, 1944.

*R. M. Pinsky* for proponent.

*William M. Marks,* special guardian for Nadine F. Miller, legatee.

FEELY, S.   The writing propounded herein was a double stationer's printed will blank, consisting of one long sheet folded once, so as to make of it four pages, each eight inches by thirteen inches; and it was so printed that typing the first page would make a fitting carbon copy on the third, and so from second to fourth.   After the death of testatrix the sheet was torn in two at the fold; and on. the trial herein, for convenience, one half, consisting of the first and second pages were marked Exhibit 1; and the third and fourth pages Exhibit 2.   Each of these exhibits now appear to be a legally subscribed and duly attested will, neither of which makes any reference to the other, nor are they numbered.   They are exactly alike, except for some dates and an alteration of the amount of a legacy on the first page, which is the center of the present discussion.

Testatrix at the outset filled up both blanks in her own handwriting, but subscribed only one blank with her name, on the second page. (Exhibit 1), on July 20, 1944.   On that date two unknown attesting witnesses signed it also below the printed attestation clause; but later testatrix herself erased their signatures.   Exhibit 2 then remained an exact copy, without any signatures whatever.

Thereafter and on August 26, 1944, four days before her death, testatrix said to the present attesting witnesses, whose

signatures now appear over the erased signatures of their predecessors, that her expenses were heavy and she feared a shortage in her means and desired to cut down a legacy to a minor niece, Nadine Fay Miller, from $2,000 to $1,200; and when they declined to make the change for her, she sent for a notary public, who at her request, and in the presence of the witnesses, canceled the figures $2,000 and wrote in over them the figures $1,200, in the two appropriate places in the minor's legacy on the first page (Exhibit 1). Through oversight there was no like alteration made in the unsigned copy on the third page (Exhibit 2).

As to the order in which the parties then proceeded to execute the sheet the testimony, naturally, is not clear. The notary testified he thought there was but one will; that he did not read either exhibit when he made the change; that had he known it was two wills, he would have changed the second exhibit also; that after the change testatrix asked the two witnesses to sign, which they did; that the notary saw she had already signed on the second page (Exhibit 1) and she said it was her signature; that she swore to it in his presence; and as to the two other signatures he found had been erased the testatrix said she had done the erasing herself some time before; that the witnesses signed after the testatrix signed, but that he did not know which page these witnesses signed first.

The attesting witness Mrs. Mabel A. Wells testified she saw testatrix sign her name on the fourth page " before I signed, because I signed the two of them at one time "; that before this witness signed the notary asked testatrix if she swore to her signature on each; and that testatrix said she did; and he asked her to repeat it for him; after that both witnesses signed their names on each sheet; " we signed twice ", in the presence of testatrix and each other. This witness is also a residuary legatee.

The attesting witness Mrs. Catherine M. Burns testified testatrix signed on the back of Exhibit 2, i.e., on the fourth page; and the notary asked her if the signature on the back of Exhibit 1, i.e., the second page, were both her signatures, and she said they were; that he then asked her to ask " us " to witness her will, which she did, and " we " signed it.

Then the notary signed his name and wrote his title just below the attesting signatures on each form; and lastly he folded the sheet, and impressed his seal once, so that it penetrated at once each of the four pages, and also his signatures.

It will be noted here that this method of execution resulted, as it were, in two wills; the subscription signature of testatrix on one was made in the presence of the witnesses, but on the other her subscription had been made a month before and later, when she signed before the present witnesses, her signature was merely acknowledged and attested anew, after the original attestation had been erased by her. If these "two wills" be considered as one, then the question arises whether or not this second attestation came under the rule as to the insertion of matter into the will above the signature and after the signature had been affixed by testatrix.

In general, the difference between the executor and the special guardian seems to be that the latter implies there are presented two separate wills of which the altered one comes under the rule foregoing as to insertion, and must be probated as it stood before the alteration; whereas the proponent urges that the four-page sheet be probated as one instrument, and its legal effect be construed at judicial settlement. Probate requires the instrument, which is to be admitted and recorded, be identified in and by the decree.

If two wills are presented which should be considered apart from each other, then the unaltered one (Exhibit 2) must be held to have been duly executed, and to be beyond the power of any court to reform so as to express what undoubtedly was the intention of the testatrix, namely, to reduce the legacy to $1,200. Then as to the altered one (Exhibit 1), there is no doubt as to the general rule being that where a testatrix subscribes her name in the absence of any witnesses, and later shows her signature to attesting witnesses and acknowledges to them her visible signature is her subscription to her last will and requests them to attest those declarations, which they do in her presence even though not in the presence of each other, the will is duly executed. The special guardian, however, relies upon a line of cases which appear to be an exception to that general rule in that they hold that where an alteration or addition is made above testator's subscription and after the subscription has been made, then the addition or alteration is not entitled to probate, nor, according to a few judges, is the rest of the will if the alteration or disposition be a dispositive one, notwithstanding in either case the testator after the alteration or addition duly acknowledges both his pre-existing, visible signature, and also his will. Thus in *Matter of Foley* (76 Misc. 168), after testator had subscribed by mark, the lawyer wrote into the preceding testimonium clause some nondis-

positive matter, such as a date, a street number and the addresses of the attesting witnesses, and thereupon by the question and answer method had the testatrix acknowledge the pre-existing subscription, and publish the will, and make the request to attest, which was once complied with, yet Surrogate Fowler held the will should be probated without those additions. In *Matter of Johnson* (60 Misc. 277) alterations were made in the body of the will two years after its original execution. After the change, testatrix acknowledged her pre-existing signature, and witnesses signed a marginal note opposite the alterations. The will was probated only in its unaltered form. These decisions rest on the strict construction that has generally been made of the Statute of Wills in respect of the manner of execution. Every written will must be " subscribed " that is, " at the end ". The next requirement is in the alternative; either the subscription must be made in the presence of the attesting witnesses, or acknowledged to them to have been so made. The altered will, in those cases, is deemed not to be the will that was subscribed. Hence if a will be altered above the subscription after it has been subscribed, it must be resubscribed (see *Matter of Bissonnette,* 127 Misc. 215, affd. 217 App. Div. 809). The pre-existing subscription cannot be later adopted by acknowledgment. The same rule applies to revocation, even in part. In this *Goettel* case, the will (Exhibit 1) in its altered form was not resubscribed by testatrix; and it cannot be regarded as a codicil to the unaltered will (Exhibit 2). It would have to be probated as a will legally entitling the minor to the $2,000.

If the unaltered will (Exhibit 2) be considered by itself, apart from Exhibit 1, then the same result would be reached despite the fact testatrix did not intend to give the minor any more than $1,200; but did mean all the rest of her will should stand. These unforseen results would be due mainly to ignorance or mistake of law on the part of testatrix or her agent for the purpose, the notary.

Even if testatrix be considered as having subscribed the unaltered will (Exhibit 2) in the mistaken belief it had been changed to read $1,200 for the minor, still she was not mistaken as to the writing being a last will, nor as to its repeating all the rest of her legacies. The weight of authority seems to favor the probating of those unaltered parts of the will that are still ascertainable, where it appears testator intended to alter only a part of the existing will, but not the whole thereof; and the same is true where a mistake on his part involves only a part of his will plan. It is difficult to draw the line at which the

mistake or alteration has become so pervasive as to justify the obiter dictum in *Christman* v. *Roesch* (132 App. Div. 22) to the effect that if a draftsman, in drawing a will, misinterpreted the instructions given him by testatrix, the instrument would not be her will. Where the mistake clearly is such as to involve the whole will, or the actual physical identity of the instrument itself, then total invalidity results — as where two persons at the same time make similar wills, simply in favor of each other, and by mutual mistake each happens to subscribe the will prepared for the other, and not his own. In such case a court having equity jurisdiction or power will refuse to reform the wills (*Matter of Bacon*, 165 Misc. 259); and a like rule applies to the subscribed memorandum required by the " statute of frauds ", because in either case there must be a " subscribed " writing before the act can be deemed valid at all, much less amended by parol.

In the latter connection it may be noted that there is some authority for holding that where the will itself manifests both the mistake and also what testatrix would have done had the fact or omission been called to her attention, the court may effectuate the intention in and by the decree of probate (see *Matter of Bissonnette*, 127 Misc. 215, *supra*). In most cases the claim of mistake is based upon matters outside the will. In the *Matter of Tousey* (34 Misc. 363) it was held a will cannot be refused probate on the ground of an alleged mistake of testatrix as to a fact which might probably have led her to do something different from what she had done. In that case her will recited she was single and had no direct heirs. A cousin claimed she had mistakenly supposed him to be dead. In *Matter of Woods* (189 App. Div. 324) while a wife, who was seriously ill, was making her will with provision for her husband in case he outlived her, his dead body, unknown to her, was lying in another room. The result of the mistake was merely an acceleration. In *Boell* v. *Schwartz* (4 Bradf. 12) the claim was testator was in error in reciting in his will he had made advances. In *In Re Jones' Will* (85 N. Y. S. 294) testatrix was said to have framed her will with an exaggerated idea as to the value of her estate. In *Matter of Estate of Finn* (1 Misc. 280) it was claimed the mistake was as to the person intended for executor when the description was merely " the doctor "; and there were three in attendance. In this group also belong the cases wherein an erroneous belief in the mind of testator — not fraudulently induced — as to the attitude of certain relatives, or their conduct, had its effect in his will. (*Matter of O'Dea*, 84 Hun 591; *Matter of Bedlow,* 67 Hun 408; *Matter of Bethune,* 48 Hun 614.)

More in point now is *Matter of Forbes* (60 Hun 171, affd. 128 N. Y. 640) where the will was probated notwithstanding testatrix shortly before executing her will expressed an intention that was not carried out in the instrument as written. She had desired to have a new will made the same as an existing will in which she had expressly omitted one of her sons, except that he was to be included in the new will for a share equal to the other sons. In drafting the new will a law clerk by following the old will too closely did include the omitted son, but not on terms altogether equal to those of the other sons. Probate of the new will was affirmed by a divided court at General Term. The dissenting opinion argued that the will was an entirety and even a partial mistake vitiated it; although this opinion admits there was authority for probating a will after having by the decree stricken out a mistaken portion of it, citing *Burger* v. *Hill* (1 Bradf. 360). In that case the testator devised as real property what was only a leasehold he had. These rulings support the guardian's theory and his claim for the $2,000 for his ward.

The proponent, however, argues that the whole sheet should be considered, just as it was before it was torn in halves after the death of testatrix; and that the mistake was not as to the alteration, but in omitting through oversight to make one part conform to the other, as if the attempt on August 26, 1944, was one to execute a last will in duplicate on a single sheet, and the duplication was not, in part, successfully carried out. Thus the sheet, when testatrix last saw it, presented a case like that of one will with similar legacies, for the minor, where no double portion was intended, and where an alteration in the upper legacy made it inconsistent with the lower one before the latter part of the writing was subscribed by testatrix without becoming aware of the omission to make them conform so as to express what was undoubtedly her intention, to give only the altered amount to the minor. The evidence is that the alteration of the amount was made on the first page of the undivided sheet before testatrix subscribed on the fourth page; and that at the time she subscribed the fourth page she also acknowledged her pre-existing subscription on the second page; and then both witnesses signed both attestation clauses, and the notary followed suit. In this way the reduction was made legally valid.

The question remains whether the signatures of the three witnesses under the attestation clause on the second page, which were affixed there after testatrix had subscribed, in their presence, on the fourth page, is an addition, if not an alteration, inserted into the body of the will ahead of the subscription that

testatrix had just made on the fourth page, within the scope of the cases cited by the special guardian (*Matter of Foley*, 76 Misc. 168, *supra*, and others).

This addition, although not, in and of itself, dispositive, was meant to have a dispositive effect, which, however, was in effect merely confirmatory of what had already been effectuated by the subscription on the fourth page. It was not an alteration of what had already been legally altered.

The case is the same as if after a legacy in an executed will had been altered the will was resubscribed and duly attested; and then an attestation clause was inserted and signed at or near the point of the alteration. This would be merely a repetitious extension of the ceremony of execution. The rule of strict construction would seem to have been carried to an unjustifiable extreme if it were held to frustrate the evident intention of testatrix in the peculiar circumstances of this case.

My conclusion is that the last will of testatrix, dated August 26, 1944, is valid; that it consists of the first and second pages (Exhibit 1) in their altered form down to the words " In Witness Whereof "; that the rest of the second page, and all of the third and fourth pages down to the words " In Witness Whereof " is to be regarded as surplusage (see *Matter of Allen*, 257 App. Div. 718) and is not to be recorded; that the rest of the fourth page is part of the will and is to be recorded; and that the minor, Nadine Fay Miller, is not entitled to more than $1,200.

On notice submit for signature and entry a decree in accord with this decision.